United States Court of Appeals,

Fifth Circuit.

No. 91–3617.

Lonnie DONAGHEY, et al., Plaintiffs,

v.

OCEAN DRILLING & EXPLORATION COMPANY, et al., Defendants.

CONOCO, INC., Old Odeco, Inc., and Odeco Drilling Service, Inc.,
Third–Party–Plaintiffs–Appellants,

v.

VARCO INTERNATIONAL, INC., Third–Party–Defendant–Appellee.

Oct. 13, 1992.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before SMITH and EMILIO M. GARZA, Circuit Judges, and RAINEY[*], District Judge.

ILIO M. GARZA, Circuit Judge:

After Lonnie Donaghey was injured while working aboard the D/B OCEAN TITAN, Donaghey and his wife brought suit against Old Odeco, Inc., the owner of the OCEAN TITAN, Odeco Drilling Services, Inc., Donaghey's employer (collectively ODECO), and Conoco, Inc. (Conoco), the party for whom Odeco was working at the time of the accident, asserting that ODECO's and Conoco's negligence caused Donaghey's injuries. Subsequently, ODECO and Conoco, alleging that Varco's negligence caused Donaghey's injuries, filed third party complaints against Varco International, Inc., Varco BJ Oil Tools, and Varco BJ Drilling Systems (collectively Varco), the manufacturer and seller of the Varco top drive system. The Donagheys then amended their complaint to name Varco as a defendant. Varco moved for summary judgment, contending that its actions were not a legal cause of Donaghey's accident and that the gross negligence of Odeco was the cause of the accident. The district court granted Varco's motion for summary judgment. ODECO and Conoco appeal. Finding that the district court improperly granted summary judgment, we reverse and

[*]District Judge of the Southern District of Texas, sitting by designation.

remand.

## I

Donaghey worked as a driller for ODECO aboard the OCEAN TITAN, an offshore drilling vessel, which was on location for Conoco in the Gulf of Mexico. During drilling operations, George Pittman, the ODECO Senior Toolpusher, determined that a safety valve on the Varco-manufactured top drive needed to be changed. In order to change the valve, the ODECO crew attempted to break the upper main shaft connection, also manufactured by Varco. The crew discovered that the connection was frozen, and tried initially to break the connection with a set of DB tongs which had a rated capacity of 65,000 pounds. Because these attempts were unsuccessful, the crew removed the DB tongs and then procured ODECO's SDD tongs—which are larger than the DB tongs and have a working capacity of up to 100,000 pounds. The SDD tongs, however, did not have the correct size jaws and did not fit around the frozen connection. The crew removed the SDD tongs, and Pittman ordered the DB tongs back on the connection. The DB tongs were pulled in excess of their rated capacity and failed during one of the attempts to break the frozen connection. Donaghey was struck and injured by a piece of the tongs.

Donaghey and his wife brought suit against ODECO, Conoco, and Varco, and ODECO and Conoco filed claims against Varco. Subsequently, Varco moved for summary judgment, arguing that it was not negligent but, that, in any event, any alleged negligence was not a legal cause of Donaghey's accident and, therefore, it was entitled to judgment as a matter of law. The Donagheys opposed Varco's motion for summary judgment on the grounds that there was a fact question whether the Varco-manufactured top drive caused Donaghey's accident. Responding to Varco's summary judgment motion, ODECO and Conoco argued that the connection had become frozen due to Varco's negligence and, even assuming that ODECO and/or Conoco were negligent and the tongs broke because they were used in excess of their rated capacity, it was foreseeable that attempts would be made to free the connection.

The district court found no factual issues with respect to Varco's liability and granted Varco's motion for summary judgment.[1] ODECO and Conoco settled with the Donagheys and, thereafter, ODECO and Conoco moved the district court to reconsider its order granting Varco's motion for summary judgment. Citing *Nunley v. M/V DAUNTLESS COLOCOTRONIS,* 727 F.2d 455 (5th Cir.) (en banc), *cert. denied,* 469 U.S. 832, 105 S.Ct. 120, 83 L.Ed.2d 63 (1984), ODECO and Conoco argued that the doctrine of superseding negligence does not apply under the general maritime law and, therefore, the district court erred in holding that Odeco's negligence was a superseding cause of the accident. The district court denied ODECO's and Conoco's motion to reconsider, with the explanation:

> Upon review, the Court may have spoken unartfully in stating that "Odeco's negligence was the superseding cause of the accident.' What is clear is that the Court intended to find, and does find, that there were no factual issues in dispute and that the negligence of Odeco in deliberately choosing to exceed the rated capacity of the tongs in attempting to unstick the frozen connection is the legal cause of the accident and that any negligence of Varco was not the legal cause of plaintiff's injury.

Record on Appeal, vol. 3, at 672.

ODECO and Conoco appeal, contending that a fact question exists whether Varco's negligence is a legal cause of Donaghey's injuries, and they also contend that the doctrine of comparative fault should be applied to determine the effects of Varco's negligence. Varco contends that the district court correctly found no genuine issue as to any material fact, and also seeks damages, alleging that ODECO and Conoco have brought a frivolous appeal.

---

[1]The district court stated:

> This Court agrees that whatever the reason the valve in question stuck, the decision by Odeco to knowingly exceed the rated capacity of the tongs, rather [than] shut down operations until the proper jaw could be located for the SDD tongs, was the legal cause of the accident.... [E]ven if Varco was negligent, Odeco's negligence was the superseding cause of the accident."

Record on Appeal, vol. 3, at 748, *Donaghey v. Ocean Drilling & Exploration Co.,* No. 91–3617 (5th Cir. filed July 24, 1991) ["Record on Appeal"].

## II

### A

In an appeal from a grant of summary judgment standard, we review the record de novo. *See International Shortstop, Inc. v. Rally's,* 939 F.2d 1257, 1263 (5th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 936, 117 L.Ed.2d 107 (1992). Summary judgment is proper if the movant demonstrates the absence of genuine issues of material fact. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Such a showing entitles the movant to summary judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). The movant accomplishes this by informing the court of the basis for its motion, and by identifying portions of the record which highlight the absence of genuine factual issues. *See generally id.* If the movant is successful, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The nonmovant cannot satisfy this burden merely by denying the allegations in the opponents pleadings but can do so by tendering depositions, affidavits, and other competent evidence to buttress its claim. *See Rally's,* 939 F.2d at 1263; *see also* Fed.R.Civ.P. 56(e). Summary judgment is appropriate if the nonmovant fails to set forth specific facts to show that there is a genuine issue for trial. *See Topalian v. Ehrmann,* 954 F.2d 1125, 1132, (5th Cir.1992) *citing Marsh v. Austin–Fort Worth Coca–Cola Bottling Co.,* 744 F.2d 1077, 1079 (5th Cir.1984).

### B

ODECO and Conoco contend that the district court erred in ruling that, as a matter of law, Varco's negligence was not a legal cause of the accident which resulted in Donaghey's injuries, and they also contend that, because the doctrine of superseding negligence does not apply in maritime cases, the doctrine of comparative negligence should be applied.

Under the general maritime law, a party's negligence is actionable only if it is a "legal cause' of the plaintiff's injuries. *See Chavez v. Noble Drilling Corp.,* 567 F.2d 287, 289 (5th Cir.1978).

"[L]egal cause is something more than "but for' causation, and the negligence must be a "substantial factor' in the injury." *Thomas v. Express Boat Co.,* 759 F.2d 444, 448 (5th Cir.1985) (citations omitted). The term "substantial factor' means more than "but for the negligence, the harm would not have resulted." *Spinks v. Chevron Oil Co.,* 507 F.2d 216, 223 (5th Cir.1975); *see also Chisholm v. Sabine Towing & Transp. Co.,* 679 F.2d 60, 63 (5th Cir.1982).

In its motion for summary judgment, Varco argued that, even if it was negligent, this alleged negligence was not a legal cause of the accident. Instead, according to Varco, the legal cause of the accident was the gross negligence of the Odeco Senior Toolpusher—that is, according to Varco, the accident occurred because the Odeco Senior Toolpusher chose to exceed the rated capacity of the tongs. To support its argument, Varco proffered the deposition testimony of Pittman.[2]

The Donagheys, in opposing Varco's summary judgment motion, argued that there was a fact question whether the allegedly defective Varco-manufactured top drive caused Donaghey's accident.[3]

[2]Varco also referred to, but never produced, the deposition testimony of Denny Ducker. On appeal, Varco states that both Ducker and Pittman admitted that the tong broke because it was pulled in excess of its rated capacity. Varco contends that it filed the deposition of Ducker in the record but that it is not contained in the record on appeal. In an appeal from a summary judgment, this court considers only those evidentiary materials that were before the district court. *See Topalian v. Ehrman,* 954 F.2d 1125, 1131–32 & n. 10 (5th Cir.1992), *petition for cert. filed,* 60 U.S.L.W. 3860 (U.S. June 4, 1992) (No. 91–1973). There is nothing to suggest that the deposition testimony of Ducker was ever filed in the district court or that the district court reviewed it, and therefore we do not consider it.

[3]The Donagheys' Memorandum in Support of Opposition to Varco's Motion for Summary Judgment consisted in its entirety of the following:

> This case involves an injury which occurred involving Lonnie Donaghey. Lonnie Donaghey was a driller employed by Odeco. He was severely injured when a portion of a tong broke during a procedure attempting to break a connection.
>
> Varco manufactured the top drive. The main connection was connected to the top drive. It is alleged that the top drive was defective in that it was overtorqued. It is also alleged that the manufacturer, Varco, recommended the wrong type pipe "dope'. It is alleged that this contributed to the accident.
>
> Copies of letters obtained from Odeco indicate that this may have been the problem which caused the accident. Based upon this, there is an issue of fact which should be submitted to the jury.

ODECO and Conoco also opposed Varco's summary judgment motion on the grounds that the connection became frozen due to the negligence of Varco.[4]  ODECO and Conoco then continued,

> [o]nce the connection became frozen, it was certainly foreseeable that attempts would be made to free the connection.  Assuming for the sake of argument that Odeco and/or Conoco were negligent (which is denied) and the tongs which broke because they were used in excess of their rated capacity, that eventuality was certainly a foreseeable result once the connection became frozen and those on board the rig were faced with having to break it."

Record on Appeal, vol. 3, at 4.[5]

We find that Varco, the movant, failed to establish (1) the absence of factual issues regarding the question whether its actions constitute a legal cause of Donaghey's injuries or (2) as a matter of

---

Record on Appeal, vol. 3, at 860–61.  We note that the admissibility of evidence on a motion for summary judgment is subject to the same standards and rules that govern admissibility of evidence at trial.  *See Lavespere v. Niagara Mach. & Tool Works, Inc.,* 910 F.2d 167, 175–76 (5th Cir.1990).  None of the parties objected to or challenged the admissibility of the Donagheys' proffer of the letters and an investigation report accompanying their memorandum and, accordingly, we find that any objections to them are waived.  *See McCloud River R.R. Co. v. Sabine River Forest Prods., Inc.,* 735 F.2d 879, 882 (5th Cir.1984) (party waived its objection where it failed to make a timely objection in district court); *Auto Drive–Away Co. of Hialeah v. Interstate Commerce Comm'n,* 360 F.2d 446, 448–49 (5th Cir.1966) (in the absence of a timely objection or motion to strike, defects in summary judgment evidence ordinarily are waived).  Additionally, the Donagheys' "Statement of Material Facts Pursuant to Rule 2.10 of the Eastern District" stated:

> (1) The Varco top drive was overtorqued.
>
> (2) The pipe dope used as recommended by Varco contained zinc compound.
>
> (3) Zinc compound is improper and this contributed to the over-torquing of the top drive.
>
> (4) The over-torquing of the top drive contributed to this accident.

Record on Appeal, vol. 3, at 889.

[4]Specifically, ODECO and Conoco stated that "the connection which was frozen had become frozen due to the negligence of Varco in recommending improper pipe dope and/or in improperly constructing the connection."  Record on Appeal, vol. 3, at 791–92.

[5]ODECO and Conoco did not submit any summary judgment evidence to controvert the evidence proffered by Varco in its summary judgment motion.  ODECO's and Conoco's Opposition to Motion for Summary Judgment was accompanied by a Reply to [Varco's] Statement of Uncontested Material Facts.

law that the negligence of ODECO and Conoco constitutes a superseding cause of Donaghey's injuries.

(1)

Contrary to ODECO's and Conoco's assertions, Varco never admitted it was negligent, but rather it stated in its summary judgment motion that, "[e]ven if the connection was overtorqued as a result of the negligence of Varco (which is denied by Varco), the accident occurred not because of the overtorqued connection but because the Odeco Senior Toolpusher knowingly chose to exceed the rated capacity of the tongs." Record on Appeal, vol. 2, at 386. Varco proffered the deposition testimony of Pittman to show that, at Pittman's instruction, the tongs were pulled in excess of their rated capacity and the tongs broke because they were "stressed out".

We find that Pittman's deposition testimony—the only summary judgment evidence submitted by Varco[6]—may support the conclusion that the negligence of ODECO and Conoco contributed to the accident which led to Donaghey's injuries. However, we find that this evidence is insufficient to establish, as a matter of law, that Varco's actions were not a legal cause of Donaghey's injuries. Second, we find that the letters and the copy of the investigation report which indicate that Varco's actions contributed to the accident[7] create a fact question with respect to Varco's liability. Third, the

---

[6]*See supra* note 2.

[7]For example, the conclusion in the investigation report states:

> Seizure of the HWDP and top drive connection resulted from inadequate galling protection from the thread dope employed on these connections. The occurrence of seizure only on new shoulders and threads further supports this conclusion.
>
> Stress calculated from application of the torsional, tensile, and hydrostatic forces during attempted freeing of the stuck drill do not appear adequate to overcome the connection preload imposed by normal makeup torque. The calculated stresses are less than one-half the yield strength of API specified minimum mechanical requirements and approximately one-third the reported actual yield strength of the top drive tools.

Record on Appeal, vol. 3, at 877.

record also creates a fact question as to causation because it indicates that the events that led to Donaghey's injuries were placed into motion only after the Varco-manufactured connection froze, and the ODECO crew attempted to break it.[8]  Accordingly, we hold that a fact question exists whether Varco's actions constitute a legal cause of the accident and the district court erred in granting summary judgment on the grounds that, as a matter of law, "any negligence of Varco was not the legal cause of plaintiff's injury."

(2)

We also find that Varco failed to establish as a matter of law that ODECO's negligence constitutes a superseding cause of Donaghey's injuries.[9]

In *United States v. Reliable Transfer Co.,* 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975), the Supreme Court abolished the doctrine of mutual fault-equal contribution and announced the rule that damages in maritime cases should be apportioned according to comparative fault.  The Supreme Court held that "when two or more parties have contributed by their fault to cause property damage in a maritime collision or stranding, liability for such damage is to be allocated among the parties proportionately to the comparative degree of their fault."  *Id.* at 411, 95 S.Ct. at 1715–16.

This court had occasion to examine the teachings of *Reliable Transfer* in connection with the doctrine of superseding negligence in *Nunley v. M/V DAUNTLESS COLOCOTRONIS,* 727 F.2d 455 (5th Cir.) (en banc), *cert. denied,* 469 U.S. 832, 105 S.Ct. 120, 83 L.Ed.2d 63 (1984).  *Nunley*—a case involving the Wreck Act, 33 U.S.C. § 409—was an appeal of six consolidated admiralty cases,

---

[8]For example, these documents establish that, after the accident, it was discovered that the threads to the Varco-manufactured piece of equipment was outside API specifications, and that drilling mud had seeped into the connection and contaminated the pipe dope therein.  A sample of the pipe dope removed from the connection contained essentially no lead components, but zinc.

[9]ODECO and Conoco cite *Nunley v. M/V DAUNTLESS COLOCOTRONIS,* 727 F.2d 455 (5th Cir.) (en banc), *cert. denied,* 469 U.S. 832, 105 S.Ct. 120, 83 L.Ed.2d 63 (1984), to support their argument that the doctrine of superseding negligence does not apply in maritime cases.

arising out of the collision of the M/V DAUNTLESS COLOCOTRONIS with a sunken wreck. In 1977, the DAUNTLESS collided with a barge (the COMBI), which, following its 1974 sinking, had remained unmarked. Defending the lawsuit, the individuals who were allegedly responsible for the sinking of the COMBI (the upriver defendants) filed a motion for judgment on the pleadings, contending that, even if they had caused the COMBI's sinking, they could not be held liable for damages resulting from the 1977 collision.[10] In evaluating the contentions of the upriver defendants, the court held that the alleged negligence of subsequent tortfeasors could not, as a matter of law, be regarded as a superseding cause exonerating them (the initial tortfeasors) from liability for damages which primarily resulted from their negligence. *Nunley,* 727 F.2d at 462. This court, *citing United States v. Reliable Transfer Co.,* 421 U.S. 397, 411, 95 S.Ct. 1708, 1715–16, 44 L.Ed.2d 251 (1975), explained that the "causal initial negligence of the upriver defendants that contributed to the later accident should make them liable for their apportioned share of the loss." *Id.*

Refusing to hold that, in all cases and as a matter of law, "the failure to mark, whether or not negligent, constitutes a superseding cause, completely absolving the party whose fault, however egregious, caused the sinking," the court framed the problem as one of " "whether the defendant is to be held liable for an injury to which he has in fact made a substantial contribution, when it is brought about by a later cause of independent origin, for which he is not responsible.' " *Id.* at 464, *citing* PROSSER, LAW OF TORTS, 4th ed. 270. The court, then, set forth the factors to be examined to determine whether an intervening force supersedes prior negligence. *Id.* at 464, *quoting*

---

[10]As the court noted:

> The basis for this argument is that the Wreck Act obligates the owner of a sunken vessel and, in some circumstances the United States, to mark or remove the wreck, and, since the upriver defendants (the actual sinkers of the vessel) have no similar obligation, they have no liability arising out of the DAUNTLESS's allegedly striking of the COMBI.

*Nunley,* 727 F.2d at 457–58.

RESTATEMENT (SECOND) OF TORTS § 442.[11]  The court emphasized that:

> The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner *does not* make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if
>
> > (a) the actor at the time of his negligent conduct should have realized that a third person might so act, or
> >
> > (b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or
> >
> > (c) the intervening act is a normal consequence of a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent.

*Nunley,* 727 F.2d at 464–65, *quoting* RESTATEMENT (SECOND) OF TORTS § 447.

In sum, then, contrary to the position advanced by ODECO and Conoco, *Nunley* did not abolish the doctrine of superseding negligence in maritime cases and the doctrine retains its vitality. *See Nunley v. M/V DAUNTLESS COLOCOTRONIS,* 727 F.2d 455 (5th Cir.) (en banc), *cert. denied,* 469 U.S. 832, 105 S.Ct. 120, 83 L.Ed.2d 63 (1984).  In *Lone Star Indus., Inc. v. Mays Towing, Inc.,*

---

[11]The factors include:

> > (a) the fact that its intervention brings about harm different in kind from that which would otherwise have resulted from the actor's negligence;
> >
> > (b) the fact that its operation or the consequences thereof appear after the event to be extraordinary rather than normal in view of the circumstances existing at the time of its operation;
> >
> > (c) the fact that the intervening force is operating independently of any situation created by the actor's negligence, or, on the other hand, is or is not a normal result of such a situation;
> >
> > (d) the fact that the operation of the intervening force is due to a third person's act or to his failure to act;
> >
> > (e) the fact that the intervening force is due to an act of a third person which is wrongful toward the other and as such subjects the third person to liability to him;
> >
> > (f) the degree of culpability of a wrongful act of a third person which sets the intervening force in motion.

*Nunley,* 727 F.2d at 464, *quoting* RESTATEMENT (SECOND) OF TORTS, § 442.

927 F.2d 1453 (8th Cir.1991), the Eighth Circuit applied the doctrine of superseding negligence in a maritime case to relieve the prior actor of liability. *Id.* at 1458. Before applying the doctrine of superseding negligence, the Eighth Circuit examined the viability of the doctrine and concluded that it still applies in maritime cases. *Id.* at 1459. In so concluding, the *Lone Star* court noted that two other circuits "seem to presume that superseding cause still applies." *Id.*[12] The court then expressly rejected the Eleventh Circuit decision of *Hercules, Inc. v. Stevens Shipping Co.,* 765 F.2d 1069 (11th Cir.1985), "[t]o the extent that *Hercules* holds that liability for negligence which is a cause in fact of injury—no matter how remote—cannot be cut off,"[13] reasoning that is not compelled by *Reliable Transfer.* The court also observed that there is no inconsistency between the doctrines of comparative fault and superseding cause. *Id.* at 1459.

We find that the negligence of ODECO and Conoco does not, as a matter of law, supersede Varco's negligence. The summary judgment evidence reflects that, due to the frozen connection, the ODECO crew applied progressively higher levels of force in an attempt to free the connection. While the summary judgment evidence shows that Pittman knowingly exceeded the rated capacity of the DB tongs—which broke and injured Donaghey—we find that the actions of the ODECO crew in attempting to free the connection could not be regarded as highly extraordinary. We also find that the actions of the ODECO crew was a normal consequence of the situation created by Varco and the

---

[12]*Lone Star* noted this court's decision in *Nunley,* 727 F.2d at 455, and the Ninth Circuit's decision of *Protectus Alpha Navigation Co. v. North Pac. Grain Growers,* 767 F.2d 1379, 1384 (9th Cir.1985) (court discussed superseding cause in dicta).

[13]The Eleventh Circuit has rejected the application of superseding cause in maritime cases.

> Under a "proportional fault' system, no justification exists for applying the doctrines of intervening negligence and last clear chance.... Unless it can truly be said that one party's negligence did not in any way contributed to the loss, complete apportionment between the negligent parties, based on their respective degrees of fault is the proper method for calculating and awarding damages in maritime cases.... The doctrines of intervening negligence and last clear chance should not be used to circumvent this "proportional fault' concept.

*Hercules, Inc. v. Stevens Shipping Co.,* 765 F.2d 1069, 1075 (11th Cir.1985) (citations omitted).

manner in which the ODECO crew acted was not extraordinarily negligent. *See Nunley,* 727 F.2d at 464–65, *quoting* RESTATEMENT (SECOND) OF TORTS § 447. Accordingly, we find that Varco failed to establish as a matter of law that the actions of ODECO and Conoco constitute a superseding cause of the accident under *Nunley.* We, therefore, hold that the district court erred in granting summary judgment in Varco's favor.[14]

III

For the foregoing reasons, we REVERSE and REMAND for trial.

---

[14]This holding is also dispositive of Varco's request to impose sanctions on ODECO and Conoco pursuant to Rule 38 of the Federal Rules of Appellate Procedure. Finding ODECO's and Conoco's appeals are not frivolous, *see Coghlan v. Starkey,* 852 F.2d 806, 810–11 (5th Cir.1988), we deny Varco's request for sanctions.