**Brenda BATISTE**

**v.**

**CITY OF BEAUMONT, City of Beaumont Police Department, Tom Scoefield, Paul Perrit, Ray E. Beck, and Darlene Wisby.**

**No. 1:05-CV-109.**

United States District Court,
E.D. Texas,
Beaumont Division.

March 28, 2006.

---

Langston Scott Adams, Terrence Leon Holmes, Attorney at Law, Beaumont, TX, for Brenda Batiste.

Joseph P. Sanders, Kyle Guthrie Thomas, Assistant City Attorney, Frank David Calvert, Calvert & Eaves, L.L.P., Beaumont, TX, for City of Beaumont, City of Beaumont Police Department, Tom Scoefield, Paul Perrit, Ray E. Beck, and Darlene Wisby.

## MEMORANDUM ORDER ADOPTING MAGISTRATE JUDGE'S REPORTS AND RECOMMENDATIONS

CLARK, District Judge.

The court referred this matter to the Honorable Earl S. Hines, United States magistrate judge, at Beaumont, Texas, for consideration pursuant to applicable laws and orders of this court, particularly Bmt. Gen. Order 04–07.

The magistrate judge submitted a "Report and Recommendation Re City of Beaumont's Motion for Summary Judgment" (Docket No. 49) which recommends that the court (a) grant its no evidence motion for summary judgment and (b) dismiss plaintiff's cause of action under Section 1983 against the defendant City of Beaumont.

The magistrate judge also submitted a "Report and Recommendation of United States Magistrate Judge" (Docket No. 51) which recommends that the court deny the motion for summary judgment submitted by defendants Paul Perritt and Darlene Wisby.

No objections have been filed. Further, upon independent review, the court concurs with the magistrate judge's analysis. Accordingly, the court concludes that the findings of fact and conclusions of law of the magistrate judge are correct, and the reports of the magistrate judge (Docket Nos. 49 & 51) are **ADOPTED**.

By separate orders, the court will implement the recommendations of the magistrate judge. For clarity, the court hereby notifies the parties that the claims now remaining for adjudication are:

A. Section 1983 allegations of excessive force against defendants Perrit and Wisby, implicating the Fourth Amendment's protection from unreasonable seizure and the Fourteenth Amendment's guarantee of Due Process; and .

B. Texas Tort Claims Act claim against the City of Beaumont.

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

HINES, United States Magistrate Judge.

This case is referred to the undersigned United States magistrate judge for pretrial proceedings. The referral order directs the magistrate judge to hear and determine matters within his dispositive authority, and to submit a report containing proposed findings of fact, conclusions of law, and a recommended disposition of other matters. Bmt. Gen. Order 04–07 at ¶ 2.

This report addresses a motion for summary judgment filed by defendants, Paul Perrit and Darlene Wisby.

## I. NATURE OF SUIT; PARTIES; BACKGROUND

Plaintiff is Brenda Batiste, a resident of Beaumont, Texas. Plaintiff alleges that Perrit and Wisby, municipal police officers of the City of Beaumont, used unlawful physical force during an arrest and subsequent detention. Plaintiff asserts a cause of action under the Federal Civil Rights Act of 1871, codified at Title 42, United States Code, Section 1983 (hereinafter "Section 1983").

## II. BACKGROUND

On June 21, 2004, plaintiff's sister, Linda LaBlue, and her family concluded plaintiff needed treatment for her mental illness, a bipolar disorder. Ms. LaBlue thought that necessary medical attention could be obtained by committing plaintiff to a mental hospital. She therefore executed an "Application for Emergency Apprehension and Detention" on June 21, 2004. *See* Pl.'s Resp., Dep. of Linda LaBlue at 6–7 (Docket No. 39–7 to 39–8). Pursuant to that application, a "mental health commitment warrant" was issued by Hon. Carl Griffith, Jefferson County Judge, the same day.[1]

Officers Perrit and Wisby executed the warrant at the 3600 block of either College Street or Stagg Drive[2] in Beaumont the next day. Perrit and Wisby were dispatched in response to a disturbance regarding two women fighting. When Perrit and Wisby arrived, Ms. LaBlue informed them of the warrant. After identifying plaintiff and verifying the warrant, the officers arrested plaintiff.

That arrest precipitated a severe, trying experience for both plaintiff and the officers. Over the next several hours, the officers transported plaintiff to three different hospitals, each of which declined to admit plaintiff for treatment. Eventually, and after intervention from a police supervisor, the officers returned plaintiff to the first hospital—Spindletop MHMR—where she was admitted, and then released from police custody.

Plaintiff's complaint and her subsequent "Rule 7 reply"—both unsworn and drafted by her lawyer—allege that throughout the above ordeal she complied with the officers' instructions, causing them no trouble. Yet, beginning with her initial arrest, and continuing at each health care facility, the arresting officers brutally, unnecessarily, purposely and repeatedly struck, kicked, and dragged her, and used a taser gun against her multiple times.[3] They also allegedly clamped down plaintiff's handcuffs so tightly that they cut into her wrists, piercing the skin, and then refused plaintiff's numerous requests to loosen the handcuffs. Further, upon their visit to Memorial Hermann Behavioral Center, Officer Wisby "used her finger on one hand to excavate plaintiff's throat while she tasered plaintiff with the other vacant hand."

---

1. *See* Texas Health & Safety Code Ann. §§ 574.001–574.014 (2005) (explaining the process to seek a warrant for commitment under the Texas Mental Health Code).

2. Plaintiff's petition and Rule 7 reply allege the warrant was executed at the 3600 block of College Street. *See* Pl.'s Rule 7 Reply at 1 (Docket No. 21); Pl.'s Orig. Pet. & Requests for Disclosure at 16 (Docket No. 1). Defendants, however, claim the warrant was exe-

cuted at the 3600 block of Stagg Drive. *See* Defs.' Mot. for Summ. J., Exhibit C, Aff. of Paul Perritt at 1 (Docket No. 35).

3. A taser gun is a "conducted energy weapon" that channels electrical energy to a target, thereby controlling and overriding the body's central nervous system. *Draper v. Reynolds*, 369 F.3d 1270, 1273 n. 3 (11th Cir.2004).

*See* Pl.'s Orig. Pet. & Request for Disclosure at 17. Upon returning to Spindletop MHMR, hours later, and after completion of the admission process, Officer Perrit allegedly restrained plaintiff on the floor while Officer Wisby straddled plaintiff and triggered the taser gun multiple times against plaintiff's back, buttocks and chest.

## III. PRIOR PROCEEDINGS

The court previously entered two partial final judgments that disposed of certain parties and claims.[4] Officers Perrit and Wisby remain in the case because the court denied their motion to dismiss based on qualified immunity.[5] The court determined that plaintiff's Rule 7 reply alleged facts that, if proven, would demonstrate a violation by these defendants of clearly established rights under the Fourth and Fourteenth Amendments of which objectively reasonable police officers would have been aware. Further, the court concluded that no objectively reasonable officer would have believed that conduct alleged by plaintiff would constitute either reasonable force in light of the alleged facts and circumstances (Fourth Amendment standard) or a good faith effort to maintain or restore discipline (Fourteenth Amendment standard). The court's denial of the qualified immunity defense was, however, without prejudice to the ability of officers Wisby and Perrit to reassert their immunity defense by subsequent motion for summary judgment.

## IV. MOTION FOR SUMMARY JUDGMENT

Rule 56, Federal Rules of Civil Procedure, permits any party in a federal civil action to move for a summary judgment. Summary judgment is appropriate only when, viewing the *evidence* in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also* Fed. R.Civ.P. 56(c). An issue is *genuine* if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255–56, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is *material* when it is relevant or necessary to the ultimate conclusion of the case. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

Summary judgment is proper after adequate time for discovery and upon motion against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. The admissibility of evidence is subject to the same standards and rules that govern admissibility of evidence at trial. *Donaghey v. Ocean Drilling & Exploration Co.,* 974 F.2d 646, 650 n. 3 (5th Cir.1992). In evaluating parties' evidence, the nonmoving party's evidence "is to be believed, and all justifiable inferences are to be drawn in [that party's] favor." *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

Weighing conflicting evidence is not appropriate at the summary judgment stage. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are *jury* functions." *Hunt v. Cromartie,* 526 U.S. 541, 552, 119 S.Ct. 1545, 143 L.Ed.2d 731 (1999) (citing *Anderson,* 477 U.S. at 255,

---

4. *See* Partial Final J. Re Defs. Scoefield & Beck (Docket No. 48); Partial Final J. & Order (Docket No. 24).

5. *See* Mem. Order Adopting Magistrate Judge's Report & Recommendation at 1–2 (Docket No. 46).

106 S.Ct. 2505) (emphasis added). At the summary judgment stage, courts must not weigh evidence and determine which party has the strongest argument; instead, courts must simply determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968).

Officers Perrit and Wisby moved for summary judgment on February 15, 2006. *See* Defs.' Mot. for Summ. J. at I. They assert that plaintiff has failed to produce evidence sufficient to raise a genuine issue of material fact on one or more essential elements of the cause of action asserted against them. Further, they argue that undisputed evidence establishes that they did not violate clearly established constitutional law. Thus, plaintiff's action should be dismissed based on their qualified immunity.

To support this latter argument, defendants accompany their motion with affidavits from themselves and two Spindletop MHMR employees. They also attach a report from a police training and taser use expert. Collectively, this evidence indicates that plaintiff's behavior was combative and violent, thus requiring the officers to use force to control her. The expert's opinion further recites that the taser's deployment log shows that it was used only four times during the entire day for short bursts of less than 5 seconds each, and that such usage does not produce bruises and burns of the type claimed by plaintiff. Thus, the officers' assert that undisputed evidence shows that their conduct was reasonable under the circumstances. *See id.* at 12. Defendants also argue that plaintiff has failed to provide sufficient evidence to prove she suffered an injury that resulted directly and only from the use of force that was excessive to the need.

## V. PLAINTIFF'S RESPONSE

Rule 56(e), Federal Rules of Civil Procedure, establishes requirements for opposing motions for summary judgment. In part, the rule provides:

> *When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.*

Local court rules flesh out procedures for responding to summary judgment motions. First, E.D. Tex. Local Rule CV–56(b) states:

> *Any party opposing the motion should serve and file a response that includes in the text of the response or as an appendix thereto, a "**Statement of Genuine Issues.**" The response should be supported by **appropriate citations** to proper summary judgment evidence as to which it is contended that a genuine issue of material fact exists. Proper summary judgment evidence should be attached to the response in accordance with the procedure contained in section (d) of this rule.*

(emphasis and underline added). Second, Local Rule CV–56(c) advises all litigants that:

> *In resolving the motion for summary judgment, . . . [t]he court will not scour the record in an attempt to determine whether the record contains an undesignated genuine issue of material fact for*

*trial before entering summary judgment.*

Plaintiff filed a timely response on March 1, 2006. The response, however is wholly conclusory. It simply argues summary judgment is improper because *"there is a material fact issue on the element on this claim." See* Pl.'s Resp. at 5. In support, plaintiff attaches her entire deposition, the entire deposition of her sister, Linda LaBlue, medical reports from a neurologist, Marwan Purghol, M.D., and photographs taken at the Spindletop MHMR on June 23, 2004 which plaintiff asserts depict bruises on her buttocks, chest, right arm and wrists, taser burns on her chest, and cuts on her wrists.

## IV. DISCUSSION AND ANALYSIS

### A. Effect of Failure to Respond as Required by Local Rules

Plaintiff's response clearly contains no statement of genuine issues or citations to proper summary judgment evidence as required by Local Rule CV–56(b). Moreover, plaintiff's mere attachment of entire depositions amounts to a request that the court scour the record to determine if it contains an undesignated genuine issue of material fact. Therefore, the court in its discretion could conclude that plaintiff has failed to properly respond, and that such failure results in a default in showing a genuine issue for trial.

The undersigned, however, elects to analyze defendants motion for summary judgment on its merits rather than on procedural grounds. This seems more prudent because courts may not grant summary judgments for the sole reason that the

party against whom it is directed fails to file an appropriate opposition. *See John v. State of Louisiana (Bd. of Tr. for State Coll. and Univ.),* 757 F.2d 698, 708 (5th Cir.1985); *see also Littlefield v. Forney Indep. Sch. Dist.,* 268 F.3d 275, 282 (5th Cir.2001).

### B. Standard of Review

In earlier proceedings, the court concluded that facts alleged by plaintiff implicate the Fourth and Fourteenth Amendments. Defendants contend that the Fourteenth Amendment is inapplicable to plaintiff's claims because defendants' actions occurred during plaintiff's arrest and seizure. *See id.* at 25. However, defendants argue plaintiff fails in any event to present evidence sufficient to establish an excessive force claim under the Fourteenth Amendment. *Id.* at 26–27.

The Fourth Amendment protects against unreasonable seizures,[6] whereas the Fourteenth Amendment guarantees due process of law for persons subject to detention.[7] Both provisions of the constitution protect citizens against excessive force by officers acting under color of state law. *See Graham v. Connor,* 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (Fourth Amendment); *Valencia v. Wiggins,* 981 F.2d 1440, 1446 (5th Cir.1993) (citing *Hudson v. McMillian,* 503 U.S. 1, 7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)); *Whitley v. Albers,* 475 U.S. 312, 320–21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (Fourteenth Amendment). An arrested person is seized within the meaning of the Fourth Amendment. *Kaupp v. Texas,* 538 U.S. 626, 631, 123 S.Ct. 1843, 155 L.Ed.2d

---

**6.** The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable ... seizures, shall not be violated ...." U.S. amend. IV.

**7.** The Fourteenth Amendment states, "[N]or shall any State deprive any person of life, liberty, or property, without due process of law." U.S. amend. IV.

814 (2003). An institutionalized person is a detainee entitled to Fourteenth Amendment protections. *DeShaney v. Winnebago County Dept. Of Soc. Serv.*, 489 U.S. 189, 200, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989); *see also Reno v. Flores*, 507 U.S. 292, 315–16, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993).

There is no bright line rule as to when a seizure ends and detention begins. *See Graham*, 490 U.S. at 395 n. 10, 109 S.Ct. 1865. A rational rule of thumb in ordinary cases would consider the Fourth Amendment as governing from the moment of arrest until the person is institutionalized. That rule makes eminent sense when an arrestee is immediately transported to a jail, police station, or hospital for booking or admittance. In this instance, however, plaintiff remained in custody of arresting officers for several hours while the officers attempted to locate a hospital that would admit plaintiff. It is possible that plaintiff's seizure ended and her detention began before she was admitted formally to the hospital. Moreover, plaintiff alleges that the officers continued to attack her even after she was admitted to Spindletop MHMR.

At trial, the court will decide whether to instruct the trier of fact on the elements of a Fourth Amendment excessive force claim, or a Fourteenth Amendment excessive force claim, or both. However, it is not necessary at the summary judgment stage to resolve that issue because a cause of action under either Amendment requires proof of a proximately caused injury. The principal focus of defendants' summary judgment motion relates to lack of evidence on proximate cause. Thus, their motion can be determined without deciding at this point whether plaintiff's claim is governed by one or the other of the Amendments, or both.

## C. Plaintiff's Controverting Evidence

Plaintiff's sworn deposition testimony differs materially from allegations contained in her lawyer-drafted complaint and Rule 7 reply. In her deposition, plaintiff concedes that she was never struck, kicked, slammed to the pavement or dragged (unless being forced to walk "unbalancedly" by the defendants qualifies as being dragged) as was originally alleged. *See* Pl.'s Resp., Dep. of Brenda Batiste at 40, 75–76 (Docket No. 39–1 to 39–5). She further concedes that she was not shot with a taser gun during her initial arrest, or at any of the interim hospitals where the officers sought her admission. The taser gun was first used after her final arrival back at Spindletop MHMR. *Id.* at 63. She further concedes that Officer Wisby did not use her finger to "excavate" her throat (*Id.* at 50–51), and admits that Officer Perrit touched her only at Spindletop MHMR. *Id.* at 61–62. Her testimony, therefore, portrays a vastly different and less egregious set of facts than previously proffered to the court.

Nonetheless, plaintiff stuck to other important aspects of her story. She testified that she was always compliant and obedient. *Id.* at 75. She testified that from the outset, she was threatened with being shot with the taser gun. *Id.* at 49–52. Further, from the outset her handcuffs were so tight that they pierced her skin, and that both officers refused to loosen them. *Id.* at 28–66, 77–78. She testified that Officer Wisby grabbed her by the throat and threatened her with the taser gun at the second hospital, Memorial Hermann Behavioral Center. *Id.* at 50–51. And, most importantly, she testified that even after she eventually was admitted to Spindletop MHMR (having been injected with a sedative at the previous hospital) Officer Perrit restrained her while Officer Wisby straddled her and shot her with the

taser gun repeatedly, either 13 or 14 times. *Id.* at 57, 61–64.

■ As noted earlier, plaintiff did not comply with the local rule requiring her to provide a statement of genuine issues. She did not support her statement with appropriate citations to proper summary judgment proof—thus requiring the court to scour the record to determine whether undesignated genuine issues of material fact exist. However, her deposition testimony suffices to controvert the officers' assertions, and raises a genuine issue of material fact as to whether the officers acted in an objectively reasonably manner (Fourth Amendment) or in a good faith effort to maintain and restore discipline (Fourteenth Amendment) at all times. Simply put, use of force of the magnitude testified by plaintiff against a docile and compliant person would constitute "wanton and unnecessary infliction of pain,"[8] and would be excessive and unreasonable in light of the facts and circumstances confronting the officer.

Consequently, if Officers Perrit and Wisby are to receive a summary judgment, they must rely on their second argument, i.e., plaintiff's failure to show injury proximately caused by defendants' alleged wrongful acts. On that issue, plaintiff testified that she sustained numerous bruises to her buttocks, chest, right arm and wrists, burns on her chest, and lacerations to her wrists as a result of the officer's action. *See* Pl.'s Resp., Dep. Of Brenda Batiste at 77, 90–92. She testified that her burns were treated with medicine prescribed (for a preexisting condition)by her dermatologist, and that the marks did not go away for months. *Id.* at 69–70. Simi-

larly, she testified that bruises and cuts on her wrists were severe enough that they did not resolve for several months. *Id.* at 77–78. She submitted pictures, consisting of exhibits to her deposition, which show bruises and other skin defacements which she identified as burn marks. She submitted a report from a Dr. Purghol, who conducted an electromyography nerve conduction study, which showed an absence of response from her left radial nerve, although Dr. Purghol opined that overall there were no significant abnormalities. *See* Pl.'s Resp., Medical Rpt. at 4 (Docket No. 38–1). Finally, she submitted photographs taken the next day at Spindletop MHMR which plaintiff avers shows lacerations to her wrists. *See* Pl.'s Resp., Pictures of Pl.'s Injury (Docket No. 38–3).

The defendants' expert in police training and taser use, Jerry Ray Staton, testified via affidavit that a downloaded deployment log of the taser gun used by Officer Wisby shows that the device was triggered only four times on the day in question, and then for only short bursts no longer than 5 seconds. *See* Def.'s Mot. for Summ. J., Exhibit K, Expert Witness Opinion at 3 (Docket No. 35). He further opined that such usage of a taser gun produces neither the type of burns nor bruises that plaintiff alleges. *Id.* at 3–5. Mr. Staton states that the taser would have to be held to plaintiff's skin for twenty-five seconds or longer for such injuries to occur. *Id.* at 4. This testimony, if competent and uncontroverted, would support defendants' assertion that plaintiff has failed to produce evidence of injuries proximately caused by the officers.

---

**8.** In *Whitley v. Albers,* 475 U.S. at 312–13, 106 S.Ct. 1078, the Supreme Court stated that cruel and unusual punishment within the meaning of the Eighth Amendment occurs when physical force amounts to an "unneces- sary and wanton infliction of pain." In *Valencia v. Wiggins,* 981 F.2d 1440, 1449 (5th Cir.1993), the Fifth Circuit applied the Eighth Amendment standard to a Fourteenth Amendment excessive use of force claim.

While plaintiff lacks Mr. Staton's expertise regarding the effects of being shot with a taser gun, her lay testimony is sufficient to raise a genuine issue of material fact as to whether the taser gun produced her bruises and burns. First, she testified that the taser was used against her repeatedly, 13 or 14 times, not four. Second, a lay person is competent to testify concerning physical injuries and conditions that are susceptible to observation by an ordinary person. *See Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 460 (5th Cir. 1996). Burns, bruises and topical lacerations are not of the character as to require skilled and professional persons to determine the cause and extent thereof. *See Franklin v. Shelton*, 250 F.2d 92, 97 (10th Cir.1958). Therefore, while the fact finder at a trial may ultimately decide to give Mr. Staton's expert opinion more weight, plaintiff's lay opinion as to the origin and cause of her burns and bruises constitutes evidence showing a genuine issue for trial for present purposes.

## V. RECOMMENDATION

The motion for summary judgment submitted by defendants Paul Perrit and Darleen Wisby, (Docket No. 35) should be denied.

March 13, 2006.